**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

OLIVER VAUGHN:DOUCE,

Plaintiff,

v.

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY et al.,

Defendants.

Civil Action No. 22-475 (RK) (TJB)

**MEMORANDUM OPINION**

**KIRSCH, District Judge**

This matter comes before the Court upon a *sua sponte* screening of *pro se* Plaintiff Oliver Vaughn:Douce's ("Plaintiff") Amended Complaint ("AC," ECF No. 23) pursuant to 28 U.S.C. § 1915(e). The AC names the following individuals and entities as Defendants: the New Jersey Department of Child Protection and Permanency ("DCPP"), New Jersey Department of Children and Families, Cynthia McGeachen, the Honorable Madelin F. Einbinder, P.J.F.P., Keri Popkin, Melisa H. Raska, Michele Scenna, Morgan Kowsky, Alexis Pollock, Keith Miller, Carina Shortino, Pamela Petersen, Kenneth McTigue, Dr. Lori Lessin Puglia, Community Medical Center Toms River ("CMCTR"), and an unnamed female doctor at CMCTR. For the reasons set forth below, the Court **DISMISSES** the AC **WITH PREJUDICE**.

## I.    BACKGROUND

Previously, the Court issued a Memorandum Order consolidating two of Plaintiff's complaints, granting his application to proceed *in forma pauperis*, and dismissing the operative complaint without prejudice. (ECF No. 19.) Specifically, the Court held that the complaint failed to comply with Rule 8 of the Federal Rules of Civil Procedure because it did not meaningfully "mention[] Defendants beyond naming them as Defendants in [the] suit" and, in its "confusing,

erratic, and convoluted" pleadings, failed to clarify "what claims Plaintiff is putting forth and what relief he seeks." (*Id.* at 6–7.) In response, Plaintiff filed an "Affidavit" seeking leave to amend his complaint. (ECF No. 20.) Thereafter, the Court issued a text order allowing Plaintiff to file an amended complaint, (ECF No. 22), and Plaintiff then filed the AC, (ECF No. 23). On August 14, 2025, Plaintiff appealed the Court's November 13, 2024, Order to the United States Court of Appeals for the Third Circuit. (ECF No. 26.) On December 9, 2025, the Third Circuit dismissed Plaintiff's appeal on the ground that it lacked appellate jurisdiction. (ECF No. 30.) The Court now proceeds to screen the AC pursuant to 28 U.S.C. § 1915(e)(2).

The following facts are derived from Plaintiff's AC and accepted as true only for purposes of screening the AC. *See, e.g., Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000).[1]

On June 6, 2019, Plaintiff located an obituary via an internet search indicating that the mother of his daughter[2] died on October 20, 2018. (AC at 6.) Plaintiff verified this information by contacting the funeral home listed on the online obituary page. (*Id.* at 6–7.) Subsequently, Plaintiff "wrote a[n] affidavit to the court to find [his] daughter," which resulted in Plaintiff receiving a call from Defendant Miller. (*Id.* at 7.) Defendant Miller explained to Plaintiff that P.D.'s father was "missing" and gave Plaintiff a date to appear in court. (*Id.*) Accordingly, Plaintiff was present in court twice in July and August 2019 "to find out the status of [his] daughter" and was apparently informed that she was placed in a temporary placement "because she had no family except her father." (*Id.*) A defendant[3] informed Plaintiff that he needed to undergo a DNA test and an

---

[1] The facts asserted in the AC are substantially similar to those asserted in the original complaint. The Court discussed the factual outline of the original complaint in its November 13, 2024, Memorandum Opinion. (ECF No. 19 at 2–3.) Though the AC is at many places unclear—to the point of being nearly incomprehensible—the Court attempts to distill from it the relevant facts.

[2] The minor female child has the initials P.D. and was born on August 26, 2010. (AC at 6.) The Court refers to the minor child by her initials.

[3] Plaintiff does not specify which of the Defendants purportedly gave him these instructions.

assessment to obtain custody of P.D. (*Id.*) Because Plaintiff believed that the Commissioner of DCPP "wanted to prolong delay trying to fin[d] something to continue holding [his] daughter," he filed a Freedom of Information Act ("FOIA") suit in district court.[4] (*Id.*)

Plaintiff also alleges that on August 26, 2010—the date that P.D. was born—Defendant CMCTR performed an operation on P.D. that lasted more than eight hours. (*Id.*) Despite Plaintiff's request that the operation be performed in New York, the operation was performed at CMCTR over Plaintiff's objection. (*Id.*) CMCTR subsequently performed another 9.5-hour operation on P.D. on August 9, 2019, also without Plaintiff's consent. (*Id.*) Plaintiff contends that this operation was "use[d] to manipulate [his] daughter under MK Ultra abuse [to] create by that false psychological bond." (*Id.*)

Construed liberally, the thirteen-count AC advances claims primarily under 42 U.S.C. §§ 1983 and 1985 against various Defendants.[5] In each count, Plaintiff appears to broadly assert violations of the Fifth and Fourteenth Amendments and 18 U.S.C. §§ 241 and 242.

Count One advances a claim against Defendants DCPP, Deputy Attorney General McGeachen, and the Honorable Madelin F. Einbinder, a state Superior Court judge. Though it is difficult to decipher, Plaintiff—in this count—seems to allege violations of the Fifth and Fourteenth Amendments, 18 U.S.C. §§ 241 and 242, U.C.C. §§ 2-201 and 9-210, 28 U.S.C. §§

---

[4] Plaintiff does not specify the jurisdiction in which he filed the FOIA suit and its ultimate disposition. A search of cases in this District via CM/ECF did not reflect that Plaintiff filed any FOIA cases at any point.

[5] Though Plaintiff does not specify—within almost all the individual counts—which statutes he is bringing each claim under, he mentions in his "Preliminary Statement" that "this is a Civil, Common Law action at law and Equitable damages ... for 1983 violate 5th 14th amend." (AC at 2.) Therefore, the Court understands Plaintiff to be advancing a Section 1983 claim in each count of the AC. "Courts in the Third Circuit frequently construe civil rights complaints from *pro se* plaintiffs to include a Section 1983 claim for alleged violations of constitutional rights, even when the complaint does not explicitly reference the statute." *Moore v. Hamilton Twp. Police Dep't*, No. 19-21430, 2020 WL 3287141, at *3 (D.N.J. June 18, 2020). Furthermore, each count contains an allegation that the relevant Defendants "conspired without probable cause or any regard to plaintiff." (AC at 8–11.) The Court understands these allegations to raise a Section 1985 claim.

1331, 1343, and 1367, 42 U.S.C. §§ 1971, 1981, 1983 and 1985, and the Civil Rights Act of 1866.[6] In this count, Plaintiff alleges that Defendants DCPP and McGeachen[7] contributed to the death of P.D.'s mother on October 20, 2018. (*Id.* at 8.) Plaintiff also asserts that, on June 3, 2019, and August 9, 2019, Defendants DCPP, McGeachen and Einbinder "conspired without probable cause or any regarding to [P]laintiff" and "deprive[d] [P]laintiff['s] rights without [h]is consent." (*Id.*)

Count Two raises a due process claim against Defendant Einbinder for conspiring to deprive Plaintiff of his parental rights "without probable cause or grand jury" on July 3, 2019, and August 9, 2019. (*Id.* at 9.) Count Three advances a claim against Defendant Popkin for conspiring with Defendant DCPP to willfully and knowingly terminate Plaintiff's parental rights to his daughter without probable cause on July 3, 2019, and August 9, 2019. (*Id.*)

---

[6] Based on the facts asserted in the AC, Plaintiff cannot plausibly advance claims under many of the statutes that he cites in Count One. First, there is no private cause of action under 18 U.S.C. §§ 241 and 242. *See Lusick v. Lawrence*, 378 F. App'x 118, 121 (3d Cir. 2010) (per curiam) (no private cause of action under Section 241); *Davis v. Warden v. Lewisburg USP*, 594 F. App'x 60, 61 n.3 (3d Cir. 2015) (per curiam) (no private cause of action under Section 242). Sections 2-201 and 9-210 of the Uniform Commercial Code concern the statute of frauds and requests for accounting, respectively; neither section has any discernible connection to Plaintiff's claims. 28 U.S.C. §§ 1331, 1343, and 1367 enumerate district courts' jurisdiction to hear cases and thus do not create a cause of action. There is no longer a statute at 42 U.S.C. § 1971. The former 42 U.S.C. § 1971 is now 52 U.S.C. § 10101. That statute concerns voting rights, and the AC contains no allegations of Plaintiff's voting rights being infringed upon. As for the 1866 Civil Rights Act claim, "[t]oday, the 1866 Civil Rights Act is primarily embodied in 42 U.S.C. §§ 1981, 1982, and 1983." *Griffith v. United States*, No. 14-793, 2015 WL 1383959, at *2 n.2 (Fed. Cl. Mar. 20, 2015) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 712 (1989)). However, Plaintiff cannot proceed on a Section 1981 claim given that all Defendants named in Count One are indisputably state actors. DCPP is a state agency and McGeachen—a Deputy Attorney General in the Division of Law (ECF No. 23-5 at 3)—and Einbinder—a state superior court judge—were both state employees acting in their official capacity. *See, e.g., Coulter v. Ramsden,* 510 F. App'x 100, 104 (3d Cir. 2013) (holding that state court judge is state actor); *Jones v. Bonta*, No. 24-3338, 2024 WL 5008030, at *4 (E.D. Cal. Dec. 6, 2024) (identifying deputy attorney general as state actor). "[N]o implied private right of action exists against state actors under 42 U.S.C. § 1981." *McGovern v. City of Philadelphia*, 554 F.3d 114, 122 (3d Cir. 2009). 42 U.S.C. § 1982 concerns the rights of citizens "to inherit, purchase, lease, sell, hold, and convey real and personal property" and is therefore also inapplicable to Plaintiff's claims. Therefore, the Court considers the remaining claims in Count One—that is, violations of 42 U.S.C. §§ 1983 and 1985.

[7] Plaintiff uses numbers to refer to each Defendant in the thirteen counts of the complaint. Plaintiff specifies which Defendants correspond with each number in his "Rule 8 A. 2.Short Statements." (AC at 5–6.) Based on these statements, the Court interprets "Defendant #1" as referring to Defendants DCPP and McGeachen collectively.

4

Count Four advances a claim against Defendant Raska for being "complicit in unlawful action with" DCPP to willfully deprive Plaintiff of his parental rights; this conduct also allegedly occurred on July 3, 2019, and August 9, 2019. (*Id.*) Count Five claims that Defendant Scenna was complicit in making an "unlawful filing" on October 22, 2019, despite knowing that the incident in question was caused by "[D]efendant[']s own[] negligence." (*Id.* at 9–10.) Count Five also alleges that Defendant Scenna deprived Plaintiff of his rights without probable cause on July 3, 2019, and August 9, 2019. (*Id.* at 9.) Count Six alleges that, on July 3, 2019, and August 9, 2019, Defendant Kowsky was complicit in concealing information that DCPP possessed, which reflected "that [P]laintiff was fit and should have received" custody of his daughter and thus discriminated against him. (*Id.* at 10.)

Count Seven alleges that, on July 3, 2019, and August 9, 2019, Defendant Pollock, "interfere[d] unlawfully with [P]laintiff's relationship with" his daughter. (*Id.*) Count Eight alleges that, on July 3, 2019, and August 9, 2019, Defendant Miller improperly exercised his powers and interfered in Plaintiff's child custody case by "comment[ing] in court that plaintiff is only 50 percent DNA he [does] not have to get her" and "by instructing the [DCPP] and uncle 3rd party to make application for custody adoption."[8] (*Id.* at 10–11.) Count Nine alleges that, on July 3, 2019, and August 9, 2019, Defendant Shortino "conspired [to] leave out material facts in her report" despite being aware that the agency in question "could not proceed." (*Id.* at 11.) Count Ten claims that, on July 3, 2019, and August 9, 2019, Defendant Petersen, created a "sham report" with intent "to deprive the biological fit father-daughter bond . . . without evidence or indictment." (*Id.*)

---

[8] In Count Eight, Defendant also cites 18 U.S.C. § 912 and the Federal Tort Claims Act ("FTCA"); however, neither statute is applicable here. (AC at 11.) 18 U.S.C. § 912, which criminalizes impersonation of a federal government official, is irrelevant to Plaintiff's claims. "The [FTCA] is a partial abrogation of the federal government's sovereign immunity that permits suits for torts against the United States." *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997). The FTCA is inapplicable in this case because Plaintiff does not bring a claim against the United States.

Count Eleven claims that, on July 3, 2019, and August 9, 2019, Defendant McTigue, *inter alia,* fabricated a report, thus depriving Plaintiff of his parental rights despite his status as P.D.'s "living fit biological father."[9] (*Id.* at 11–12.) Count Twelve, likewise, claims that, on July 3, 2019, and August 9, 2019, Defendant Puglia violated Plaintiff's rights by "refusing to let [P]laintiff see" his daughter and putting her up for adoption. (*Id.* at 12.) Count Thirteen alleges a medical malpractice claim and violations of Sections 241 and 242 against an unnamed female doctor at CMCTR, who, on August 26, 2010, "fail[ed] to cut navel cord properly on PD which is the result in her re[c]ent cause for surgery." (*Id.*) Defendant appears to acknowledge that the 2010 malpractice claim may be time-barred and thus also raises later malpractice claims on July 3, 2019, and on August 8–9, 2019. (*Id.* at 5, 12.)

## II.    LEGAL STANDARD

The Court may dismiss any claims that are "(i) . . . frivolous or malicious; (ii) fail[] to state a claim upon which relief may be granted; or (iii) seek[] monetary relief from a defendant immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)–(iii). "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana,* 506 F. App'x 120, 122 (3d Cir. 2012). A court must be mindful to hold a *pro se* plaintiff's complaint to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520 (1972) (per curiam).

---

[9] In Count Eleven, Plaintiff also mentions in passing 28 U.S.C. § 1602, 4 U.S.C. § 101, and the Sixth Amendment, all of which are wholly unconnected with his case. (AC at 12.) Section 1602 concerns the immunity of foreign states in United States courts and Section 101 prescribes the oath of office to be sworn by state officials. The Court cannot identify how either statute connects to Plaintiff's claims. Likewise, "[t]he Sixth Amendment confrontation guarantee applies only to 'criminal prosecutions' by the plain language of the Amendment." *Johnson v. Phila. Hous. Auth.,* 448 F. App'x 190, 193 n.3 (3d Cir. 2011) (citing *Hannah v. Larche,* 363 U.S. 420, 440 (1960)). Because there is no indication that the child custody proceeding at issue here was a criminal prosecution, the Sixth Amendment is inapplicable to this case.

Although the Court cannot typically *sua sponte* dismiss a case on statute of limitations grounds, it may do so "when a statute-of-limitations defense is apparent from the face of the complaint . . . pursuant to 28 U.S.C. § 1915." *McPherson v. United States*, 392 F. App'x 938, 943 (3d Cir. 2010). The Third Circuit has recognized that a district court's statutory screening authority under section 1915 "differentiates *in forma pauperis* suits from ordinary civil suits and justifies an exception to the general rule that a statute of limitations defense should not be raised and considered *sua sponte*." *Smith v. Del. Cnty. Ct.*, 260 F. App'x 454, 455 (3d Cir. 2008) (per curiam) (quoting *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 656–57 (4th Cir. 2006)).

## III.    DISCUSSION

Even applying a less stringent review of the AC given Plaintiff's *pro se* status, each of Plaintiff's claims must be dismissed as time-barred.

The statute of limitations for Section 1983 claims is "governed by the personal injury statute of limitations of the state in which the cause of action accrued." *O'Connor v. City of Newark*, 440 F.3d 125, 126 (3d Cir. 2006). Under New Jersey law, that limitations period is two years. *Id.* at 126–27 (citing N.J. Stat. Ann. § 2A:14–2). Section 1985(3) claims are subject to the same statute of limitations.[10] *Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 79 (3d Cir.1989).

By contrast, federal law governs when a Section 1983 claim accrues. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Absent exceptions not present here, the limitations periods for Section 1983 claims begins to run "when the wrongful act results in damages." *Dique v. N.J. State Police*, 603 F.3d 181, 186 (3d Cir. 2010). Under Section 1983, "[a]n accrual analysis begins with identifying 'the specific constitutional right' alleged to have been infringed." *McDonough v. Smith*, 588 U.S.

---

[10] Section 1985(3)—"Depriving Rights or Privileges"—is potentially applicable to Defendant's claim, while subsections one ("Preventing Officer from Performing Duties") and two ("Obstructing Justice; Intimidating Party, Witness, or Juror") are clearly inapplicable.

109, 115 (2019) (quoting *Manuel v. City of Joliet*, 580 U.S. 357, 370 (2017)). Likewise, as held by the Third Circuit in *Bougher*, a claim under § 1985(3) accrues when a plaintiff "knew or should have known of the alleged civil rights violation. The statute of limitations, accordingly, runs from the date of each overt act causing damage to plaintiff." *Bougher*, 882 F.2d at 80 (citation omitted). Accordingly, the Court will examine each count of the AC to determine if it is timely.

Plaintiff's Section 1983 claims seem to be based on alleged due process violations under the Fifth and Fourteenth Amendments. (AC at 2–3.)[11] "[A] procedural due process claim . . . is complete . . . when the State fails to provide due process." *Reed v. Goertz*, 598 U.S. 230, 236 (2023) (internal quotation marks omitted). Plaintiff appears to raise a procedural due process claim because he challenges the process he received during the child custody proceedings involving his daughter. Here, Plaintiff asserts that Defendant Einbinder—the New Jersey family court judge presiding over Plaintiff's child custody case—"violated Plaintiff'[s] due process rights without probable cause or grand jury by take away [h]is parental rights" on July 3, 2019, and August 9, 2019. (AC at 9.) Nearly all the allegations contained within the AC relate to Plaintiff's child custody case, and each of these counts alleges that Defendants named therein allegedly violated Plaintiff's rights on dates on or before August 9, 2019. Therefore, the statute of limitations on all counts—apart from Count Five, which alleges certain additional conduct—began running, at the latest, on August 9, 2019, when Plaintiff asserts he was denied due process.

In Count Five, Plaintiff assails additional conduct by Defendant Scenna, namely "complicity [in an] unlawful filing" made on October 22, 2019. (*Id.* at 10.) However, Plaintiff asserts that this conduct, too, "without probable cause or presentment of a grand jury violate[d]

---

[11] Though several of Plaintiff's claims throughout the AC rely on Sections 241 and 242, the Court does not consider these statutes for the reasons stated *supra,* n.6.

due process of law." (*Id.*) Therefore, because Plaintiff asserts a violation of due process on October 22, 2019, this claim accrued on that date. Plaintiff filed the original complaint in the instant case on January 31, 2022, more than two years after his latest claim accrued. Therefore, all of Plaintiff's Section 1983 claims are barred by the applicable statute of limitations.[12] In terms of Plaintiff's Section 1985 claims, each overt act causing damage to Plaintiff occurred more than two years before he filed his complaint, as discussed *supra*. The last overt act alleged in the AC occurred on October 22, 2019. Therefore, Plaintiff's Section 1985 claims are also barred by the statute of limitations. Accordingly, all of Plaintiff's claims must be **DISMISSED** as untimely.[13]

---

[12] Notably, Plaintiff filed a petition for habeas corpus in federal court on March 10, 2020, which this Court previously observed "also allege[d] civil rights violations against the same Defendants as those" in the original complaint. (ECF No. 19 at 2 n.4); *see Douce v. N.J. Div. of Child Prot. & Permanency*, No. 20-2619, 2021 WL 825451 (D.N.J. Mar. 4, 2021), *aff'd sub nom., Vaughn:Douce v. N.J. Div. of Child Prot. & Permanency*, No. 21-1596, 2021 WL 3403670 (3d Cir. Aug. 4, 2021). The Defendants named in the original complaint and the AC are unchanged except for the addition of Defendant McGeachen, who was not named in the original complaint but is mentioned in the AC. As the Court noted in its November 13, 2024, Memorandum Opinion, "the allegations at issue in [the habeas corpus petition] appear to be interrelated with the allegations at issue in the present dispute." (ECF No. 19 at 6 n.6.) In short, it is evident that—for at least some of the claims at issue—Plaintiff was aware of Defendants' alleged conduct before the statute of limitations expired and even assailed that conduct in a judicial forum within the applicable statute of limitations period.

[13] Though the Court dismisses the AC on statute of limitations grounds, there are likely alternate grounds on which this Court would otherwise order dismissal. As the Court observed in its November 13, 2024, Memorandum Opinion, there are likely Eleventh Amendment grounds on which to dismiss the claims against the state-entity Defendants. (ECF No. 19 at 6 n.6.) Further, as the Court underscored, matters involving child custody and parental rights are ordinarily beyond the ambit of federal courts' jurisdiction. (*Id.*) Plaintiff has not meaningfully remedied either of these issues.

Most of Plaintiff's claims also do not withstand scrutiny under Rule 8 of the Federal Rules of Civil Procedure because the underlying facts in the AC are so vague and incoherent as to render them largely incomprehensible. In other words, it is almost impossible to clearly connect the facts that Defendant asserts in the AC to the lion's share of the claims contained therein. "Taken together, Rules 8(a) and [8(d)(1)] underscore the emphasis placed on clarity and brevity by the federal pleading rules." *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 702 (3d Cir. 1996) (internal quotation marks omitted). At its core, the purpose of a pleading is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "While a court should liberally construe the pleadings of a *pro se* plaintiff, the complaint must still comply with the pleading requirements of Rule 8." *Prelle v. United States*, No. 22-1453, 2022 WL 16958896, at *1 (3d Cir. Nov. 16, 2022) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013)). The lack of clarity in the AC undermines Defendants' right to "fair notice" of the claims asserted and the grounds upon which those claims rest. *See Twombly*, 550 U.S. at 561.

As discussed *supra,* the claims in the AC all clearly fall outside the applicable statute of limitations. To the extent that the AC is difficult to decipher as to when the applicable statute of limitations began accruing, Plaintiff's prior habeas corpus petition, *see supra* note 12, confirms the relevant timeline.[14] The events underlying Plaintiff's habeas corpus petition—which are substantially similar to those described in the AC—occurred between June 2019 and September 2019. *Douce,* 2021 WL 825451, at *1. Because Plaintiff's claims clearly fall outside the applicable statute of limitations and there are no grounds for tolling the statute of limitations, further amendment would be futile. *Grayson v. Mayview State Hosp.,* 293 F.3d 103, 113 (3d Cir. 2002) (district court may "deny[] leave to amend under [Federal Rule of Civil Procedure] 15(a) when amendment is inequitable or futile"); *see Stokes v. Internal Affs. Section*, No. 19-20414, 2020 WL 241331, at *2 (D.N.J. Jan. 15, 2020) (*sua sponte* dismissing complaint with prejudice on statute of limitations grounds); *Omar v. Blackman*, 590 F. App'x 162, 166 (3d Cir. 2014) (enumerating potential grounds for tolling). Accordingly, the AC is **DISMISSED WITH PREJUDICE.**

---

[14] The Court may take judicial notice of prior proceedings involving Plaintiff. *Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414, 416 n.3 (3d Cir.1988)) (citation omitted).

10

## CONCLUSION

For the reasons set forth above, Plaintiff's Amendment Complaint is **DISMISSED WITH PREJUDICE.** An appropriate Order accompanies this Memorandum Opinion.

ROBERT KIRSCH
UNITED STATES DISTRICT JUDGE

Dated: June 29, 2026

11